**In re Marvin SCHUMAN, dba H & M Electric, Debtor.**

**Gary MILLER, Chapter 7 Trustee, Appellant,**

**v.**

**Harriet SCHUMAN, Appellee.**

**BAP No. CC–87–1032 JMoV.**

**Bankruptcy No. LA84–19139–SB.**

**Adv. No. LA85–4030–SB.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued and Submitted Sept. 17, 1987.

Decided Dec. 11, 1987.

---

Susan C. Jay, Law Offices of David B. Bloom, Los Angeles, Cal., for appellant.

R. Wayne Dorcy, Moneymaker & Kelley, Los Angeles, Cal., for appellee.

Before JONES, MOOREMAN and VOLINN, Bankruptcy Judges.

## OPINION

PER CURIAM.

The Chapter 7 trustee, Gary Miller, appeals the bankruptcy court's order granting summary judgment dismissing this adversary proceeding. We AFFIRM.

### FACTS

The Debtor, Marvin Schuman, and the Appellee, Harriet Schuman, were divorced by Final Judgment of the Superior Court of Los Angeles on August 10, 1983. The Debtor and Mrs. Schuman have two children. During the course of the divorce proceedings, Mrs. Schuman received custody of the children and the Debtor became obligated to pay child support. On February 21, 1984, a Stipulation for Modification of Interlocutory Judgment of Dissolution of Marriage was filed ("modification"). The modification was signed by the Judge of the Superior Court on March 22, 1984. Pursuant to the modification the Debtor transferred to Mrs. Schuman his interest in their community property residence. The deed to the property was recorded on March 7, 1984. The modification stated that the transfer was in consideration for:

1. Credit for child support payments totalling $18,010, exclusive of interest;

2. Harriet Schuman's interest in a savings account of $5,580;

3. Attorney's fees due Harriet Schuman's counsel in the amount of $1,000;

4. $3,500 cash; and

5. Harriet Schuman's interest in Marvin Schuman's retirement plan valued at $4,530.

The modification further contained a provision that Marvin Schuman was not to file a voluntary bankruptcy petition within 120 days of the date of recordation of the deed transferring his interest in the residence.

On October 13, 1984, less than one year after the transfer of property pursuant to the modification, Marvin Schuman filed a petition under chapter 7 of the Bankruptcy Code.

The chapter 7 trustee, Gary Miller, brought an action against Mrs. Schuman to set aside, as a preference, the transfer pursuant to the modification. The trustee argued that Mrs. Schuman was an "insider" within the meaning of the Bankruptcy Code. Mrs. Schuman brought a motion for summary judgment on the ground that she was not an insider and, thus, since the transfer fell outside of the 90 day preference period, the transfer could not be avoided pursuant to section 547(b) of the Bankruptcy Code.

At the hearing on September 23, 1986 the trial court granted the motion for summary judgment, finding that Mrs. Schuman was not an insider. The court also found that the transfer occurred at the time of the divorce in August, 1983 and, therefore, outside of the one year preference period of section 547. On October 31, 1986 Proposed Findings of Fact and Conclusions of Law in support of the motion for summary judgment were filed. On December 12, 1986 the order granting summary judgment was entered. The trustee timely appealed.

## STANDARD OF REVIEW

■ A reviewing court will affirm a grant of summary judgment only if it appears from the record, after viewing all evidence and factual inferences in the light most favorable to the nonmoving party, that there are no genuine issues of material fact and that the moving party is entitled to prevail as a matter of law. *In re Stephens*, 51 B.R. 591, 594 (9th Cir. BAP 1985). A bankruptcy court's grant of summary judgment is reviewed de novo. *In re Center Wholesale, Inc.*, 788 F.2d 541, 542 (9th Cir.1986).

■ When a transfer occurs within the meaning of the Bankruptcy Code is a question of law and subject to de novo review. *In re Newcomb*, 744 F.2d 621, 625 (8th Cir.1984).

## DISCUSSION

1. *Whether summary judgment should have been granted*

■ The first question before the Panel is whether any genuine issues of material fact exist that would preclude the entry of summary judgment. If not, we must determine whether the trial court correctly concluded that Mrs. Schuman was entitled to judgment as a matter of law.

Section 547 of the Bankruptcy Code authorizes a bankruptcy trustee to avoid preferential transfers made by a debtor within a certain period of time prior to the bankruptcy filing. 11 U.S.C. section 547. Where the creditor is not an insider, the preference period is 90 days. 11 U.S.C. section 547(b)(4)(A). Where the creditor is an insider, the period is extended to one year. 11 U.S.C. section 547(b)(4)(B). The term "insider" is defined in Bankruptcy Code section 101(30). That section provides in relevant part:

In this title—

(30) "insider" includes—

(A) if the debtor is an individual—

(i) relative of the debtor or a general partner of the debtor; ....

11 U.S.C. section 101(30). Section 101(39) provides:

(39) "relative" means individual related by affinity or consanguinity within the third degree as determined by the common law, or individual in a step or adoptive relationship within such third degree;

11 U.S.C. section 101(39).

A spouse of a debtor is a relative as defined by section 101(39) because the definition includes individuals "related by affinity". A former spouse, however, is not related by affinity; thus, "a former spouse will not be considered a relative". 2 L. King, *Collier on Bankruptcy*, paragraph 101.39 (15th ed. 1986). Nevertheless, the

definition of insider is subject to 11 U.S.C. section 102(3) which states that the terms "includes" and "including" are not limiting. Thus, the courts have widely agreed that Congress did not intend to limit the classification of insiders to the statutory definition. *See, e.g., In re Missionary Baptist Foundation of America, Inc.,* 712 F.2d 206, 210 (5th Cir.1983) (the "[u]se of the word 'includes' in section 101(25) [currently section 101(30)] evidences Congress' expansive view of the scope of the insider class, suggesting that the statutory definition is not limiting and must be flexibly applied on a case-by-case basis."); *In re Ribcke,* 64 B.R. 663, 666 (Bankr.D.Md. 1986); *In re Hartley,* 52 B.R. 679, 689 (Bankr.N.D.Ohio 1985); *In re Montanino,* 15 B.R. 307, 310 (Bankr.D.N.J.1981).

According to the legislative history, an insider is "one who has a sufficiently close relationship with a debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor." S.Rep. No. 95–989, 95th Cong., 2nd Sess. 25 (1978) and H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 312 (1977), reprinted in U.S. Code Cong. & Admin. News, 1978, pp. 5787, 5810, 6269. The tests developed by the courts in determining who is an insider focus on the closeness of the parties and the degree to which the transferee is able to exert control or influence over the debtor. In *In re Lemanski,* 56 B.R. 981, 983 (Bankr.W.D.Wis.1986), the court stated that a transferee "is an insider if, as a matter of fact, he exercises such control or influence over the debtor as to render their transaction not arms-length." *See also In re Taylor,* 29 B.R. 5, 7 (Bankr.W.D.Ky. 1983) (an insider is "an entity whose close relationship with the debtor subjects any transactions made between the debtor and such entity to heavy scrutiny.... Who will qualify as an insider must be held as a question of fact.")[1]

It appears in this case that the facts which might indicate control or influence on the part of Mrs. Schuman are undisputed. For instance, it is undisputed that the Debtor and Mrs. Schuman were married for 19 years, that Mrs. Schuman has custody of the two children, and that the Debtor has expressed his desire that his children be well provided for. It is also undisputed that, at the time of the transfer, the Debtor was remarried and that his relationship with Mrs. Schuman was marked by hostility.

The trustee argues that summary judgment should not have been granted since there was a dispute over whether Mrs. Schuman had reasonable cause to believe the Debtor was insolvent. Even if Mrs. Schuman's knowledge is disputed, it appears to be irrelevant. Prior to the 1984 amendments, a trustee seeking to avoid a preferential transfer to an insider had to show that the insider had reasonable cause to believe that the debtor was insolvent. 11 U.S.C. section 547(b)(4)(B)(ii) (1978). However, the effect of the 1984 amendment to section 547(b)(4)(B) was to remove the requirement that an insider have reasonable cause to believe that the debtor was insolvent.[2] *See In re Craig Oil Co.,* 785 F.2d 1563, 1566 (11th Cir.1986) ("Prior to the new act, payment was preferential only when the creditor had reasonable cause to believe the debtor was insolvent at the time of payment.... The new statute defines preference solely with respect to a payment's effect on the size of the debtor's

---

1. One of the arguments advanced by the trustee is that since the insider determination is a question of fact, a grant of summary judgment is precluded as a matter of law. This position is untenable. The Panel agrees that the insider determination might be considered a "question of fact" in the sense that it is made on a case-by-case basis, after the consideration of various factors. Nevertheless, where the underlying facts are undisputed, a trial court is free, on a motion for summary judgment, to determine whether the established facts satisfy the statutory standard. In this sense, it would be more accurate to consider the insider determination as a mixed question of law and fact. *See Pullman–Standard v. Swint,* 456 U.S. 273, 289, n. 19, 102 S.Ct. 1781, 1790, n. 19, 72 L.Ed.2d 66 (1982).

2. The language of section 547 as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984 governs this proceeding since Debtor filed his petition on October 13, 1984 four days after the October 9, 1984 effective date of the non-jurisdictional amendments to the Bankruptcy Code. Pub.L. No. 98–353, section 553(a), 98 Stat. 333, 392 (1984).

estate.... [A] creditor's state of mind is now immaterial in finding a preference.") (citations omitted); *see also In re Lemanski,* 56 B.R. 981, 984–985 (Bankr.W.D.Wis. 1986). Since this element need no longer be established, even if Mrs. Schuman's knowledge of the Debtor's insolvency is disputed, it cannot be considered relevant or material so as to preclude summary judgment. Accordingly, since there was no dispute as to the material facts, the trial court was free to determine whether the facts satisfy the statutory standard.

In our view, the trial court correctly concluded that Mrs. Schuman is not an insider within the meaning of section 101(30). Although it is true that the parties had been married for nineteen years and the Debtor had expressed a desire that his children be well provided for, these facts do not indicate that Mrs. Schuman was able to exert sufficient influence over the Debtor to render her an insider. Rather, the facts that the Debtor was remarried at the time of the transfer and that his relationship with Mrs. Schuman was hostile, suggest that she was unable to exert control over the Debtor in his financial decisions. The negotiations between the Debtor and Mrs. Schuman were adversarial in nature. In fact, Mrs. Schuman had previously pursued the Debtor in court to get child support payments and both parties had retained counsel to represent their interests. Thus, it is clear that the Debtor was not volunteering payment on his child support obligation. These factors suggest that the transaction was, indeed, arms-length. Accordingly, we conclude that the trial court correctly determined that Mrs. Schuman did not exert the necessary degree of control or influence to render her an insider.

### 2. *The Date of the Transfer.*

The trial court found that the transfer occurred at the time of the divorce in August, 1983 and, therefore, outside of the one year preference period of section 547(b)(4)(B). The trustee argues that this was error. The trustee contends that the transfer of the subject property was effectuated pursuant to the 1984 modification and that the transfer actually occurred on March 7, 1984, the date the deed was re-

corded. We agree. The question of when a transfer occurs is governed by section 547(e)(2) which states in pertinent part:

(2) For purposes of this section ... a transfer is made—

(A) at the time such transfer takes effect between the transferor and transferee, if such transfer is perfected at, or within 10 days after, such time; [or]

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days ...

11 U.S.C. section 547(e)(2). Consequently, establishing the date on which a transfer was made requires a determination of when the transfer was perfected under state law. *In re Gulino,* 779 F.2d 546, 549 (9th Cir.1985). In California, perfection of a deed of trust occurs upon the recordation of the document with the county recorder. Cal.Civ.Code section 1213. Here, the interspousal transfer deed was recorded on March 7, 1984, well within the one year preference period of section 547. Thus, it appears that the trial court erred in deeming the date of the divorce the date of the transfer. Nevertheless, because we affirm the trial court's ruling that Mrs. Schuman is not an insider, the error with regard to the date of the transfer is harmless. Harmless error does not justify reversal. *See Burgess v. Premier Corp.,* 727 F.2d 826, 836 (9th Cir.1984).

We AFFIRM the trial court's order granting summary judgment.