# LAMIE *v.* UNITED STATES TRUSTEE

No. 02–693.   Argued November 10, 2003—Decided January 26, 2004

KENNEDY, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, SOUTER, THOMAS, GINSBURG, and BREYER, JJ., joined, and in which SCALIA, J., joined except for Part III. STEVENS, J., filed an opinion concurring in the judgment, in which SOUTER and BREYER, JJ., joined, *post*, p. 542.

*Thomas C. Goldstein* argued the cause for petitioner. With him on the briefs were *John M. Lamie, pro se, Amy Howe, G. Eric Brunstad, Jr., John A. E. Pottow,* and *Craig Goldblatt.*

*Lisa S. Blatt* argued the cause for respondent. With her. on the brief were *Solicitor General Olson, Assistant Attorney General Keisler,* and *Deputy Solicitor General Hungar.*

JUSTICE KENNEDY delivered the opinion of the Court.*

Section 330(a)(1) of the Bankruptcy Code, 11 U. S. C. § 330(a)(1), regulates court awards of professional fees, including fees for services rendered by attorneys in connection with bankruptcy proceedings. Petitioner, a bankruptcy attorney, sought compensation under the section for legal services he provided to a bankrupt debtor after the proceeding was converted to a Chapter 7 bankruptcy. His application for fees was denied by the Bankruptcy Court, the District Court, and the United States Court of Appeals for the Fourth Circuit. Each court held that in a Chapter 7 proceeding § 330(a)(1) does not authorize payment of attorney's fees unless the attorney has been appointed under § 327 of the Code. See 11 U. S. C. §§ 327 and 701 *et seq.* Petitioner was not so appointed, and his fee request was denied. Having granted the petition for certiorari to review this holding, we now affirm.

I

In 1994 Congress amended the Bankruptcy Code. Bankruptcy Reform Act of 1994 (Act), 108 Stat. 4106. The subject of professional fees was addressed and comprehensive changes were made. See 3 Collier on Bankruptcy ¶ 330.LH[5], pp. 330–75 to 330–76 (rev. 15th ed. 2003). Most of the changes served to clarify the standards for the award of professional fees; but various courts disagree over the proper interpretation of the portion of the statute relevant to this dispute, concerning attorney's fees.

The Act replaced the predecessor section to the one in issue here. Compare 108 Stat. 4130–4131 (§ 224(b) of the Act amending 11 U. S. C. § 330(a)) with 11 U. S. C. § 330(a) (1988 ed.). Before the 1994 Act, § 330(a) had read as follows:

"(a) After notice to *any* parties in interest and *to* the United States trustee and a hearing, and subject to sec-

---

*JUSTICE SOUTER and JUSTICE BREYER join this opinion in its entirety. JUSTICE SCALIA joins this opinion except for Part III.

tions 326, 328, and 329 *of this title,* the court may award to a trustee, *to* an examiner, to a professional person employed under section 327 or 1103 *of this title, or to the debtor's attorney*—

"(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney . . . and by any paraprofessional persons employed by such trustee, professional person, or attorney . . . ; and

"(2) reimbursement for actual, necessary expenses." *Ibid.* (emphasis added to highlight text later deleted).

Pursuant to the 1994 Act, 11 U. S. C. §330(a)(1) now reads as follows:

"(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103—

"(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

"(B) reimbursement for actual, necessary expenses."

As can be noted, the 1994 enactment's principal, substantive alteration was its deletion of the five words at the end of what was §330(a) and is now §330(a)(1): "or to the debtor's attorney."

The deletion created an apparent legislative drafting error. It left current §330(a)(1) with a missing "or" that infects its grammar (*i. e.,* "an examiner, [or] a professional person . . ."). Furthermore, the Act's inclusion of the word "attorney" in §330(a)(1)(A) defeats the neat parallelism that otherwise marks the relationship between §§330(a)(1) and 330(a)(1)(A) (*i. e.,* in §330(a)(1): "trustee, . . . examiner, [or] professional person"; in §330(a)(1)(A): "trustee, examiner, professional

person, or attorney") and so casts some doubt on the proper presence of "attorney." That the pre-1994 text had no grammatical error and was parallel in its structure strengthens the sense that error exists in the new text.

The Courts of Appeals for the Fifth and Eleventh Circuits, when asked to interpret current § 330(a)(1), concluded that its language was plain irrespective of these quirks and history. Under the statutory language as written, those courts held, fees may be awarded to attorneys for services rendered only to the extent they are payments to "a professional person employed under section 327," see, *e. g.*, § 327(a) (authorizing an appointed trustee in a Chapter 7 bankruptcy action to "employ one or more attorneys . . . to represent or assist the trustee in carrying out the trustee's duties under this title"); § 327(e) (authorizing an appointed trustee in a Chapter 7 bankruptcy action to "employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, . . ."). See *In re Pro-Snax Distributors, Inc.*, 157 F. 3d. 414 (CA5 1998); *In re American Steel Product, Inc.*, 197 F. 3d 1354 (CA11 1999). The Courts of Appeals for the Second, Third, and Ninth Circuits, in contrast, concluded that the text's apparent errors rendered the section ambiguous, requiring consideration of the provision's legislative history. That history, those courts held, shows Congress intended § 330(a)(1) to continue to allow compensation of Chapter 7 debtors' attorneys, irrespective of qualification under § 327. *In re Ames Dept. Stores, Inc.*, 76 F. 3d 66 (CA2 1996); *In re Top Grade Sausage, Inc.*, 227 F. 3d 123 (CA3 2000); *In re Century Cleaning Services, Inc.*, 195 F. 3d 1053 (CA9 1999). See also 3 Collier on Bankruptcy, *supra*, ¶ 330.LH[5], at 330–75 to 330–76.

This interpretive divide became relevant to petitioner in his representation of Equipment Services, Inc. (ESI). ESI retained petitioner to prepare, file, and prosecute a Chapter 11 bankruptcy proceeding on its behalf. He did so, all the

while representing ESI with the approval of the court under § 327. See *In re Equipment Services, Inc.*, 290 F. 3d 739, 742 (CA4 2002) (case below). See also 11 U. S. C. § 1107(a) (authorizing debtor-in-possession to exercise the statutory rights and powers of an estate trustee, including to retain counsel under § 327). Three months into the Chapter 11 reorganization, the United States Trustee (Government) filed a motion to convert the action into a Chapter 7 liquidation proceeding. The court granted the Government's motion and appointed an estate trustee pursuant to § 701, 11 U. S. C. § 701(a). This terminated ESI's status as debtor-in-possession and so terminated petitioner's service under § 327 as an attorney for the debtor-in-possession. Yet petitioner continued to provide legal services to ESI, the debtor, even though he did not have the trustee's authorization to do so. He prepared reports detailing debts incurred and property acquired since the initial filing; he amended asset schedules; and he appeared at a hearing on an adversary complaint.

In due course petitioner filed an application seeking fees under § 330(a)(1) for the time he spent on ESI's behalf after the Chapter 7 conversion. The Government objected to the application. It argued that § 330(a)(1) makes no provision for the estate to compensate an attorney not authorized under § 327. The court agreed and denied the fees. *In re Equipment Services, Inc.*, 253 B. R. 724 (Bkrtcy. Ct. WD Va. 2000). (Petitioner was paid fees for the services he provided to ESI before conversion of the proceeding to Chapter 7 and when ESI was the debtor-in-possession. The parties do not contest those fees.)

Petitioner unsuccessfully sought reversal of the Bankruptcy Court's determination, first from the District Court, see *In re Equipment Services, Inc.*, 260 B. R. 273 (WD Va. 2001), then from the Court of Appeals, see 290 F. 3d 739 (CA4 2002). Both courts concluded the plain language of § 330(a)(1) controlled and that attorneys who provide services to debtors in Chapter 7 proceedings must be hired by

the trustee under § 327 to be eligible for compensation. The Court of Appeals acknowledged that its holding deepened the divide among the various Circuits, but held fast to the statute's plain language, "particularly because application of that plain language supports a reasonable interpretation of the Bankruptcy Code," *id.*, at 745. We granted the petition for certiorari, 538 U. S. 905 (2003), and now resolve the issue.

## II

Petitioner argues that the existing statutory text is ambiguous and so requires us to consult legislative history to determine whether Congress intended to allow fees for services rendered by a debtor's attorney in a Chapter 7 proceeding, where that attorney is not authorized under § 327. He makes the case for ambiguity, for the most part, by comparing the present statute with its predecessor. Thus, he says the statute is ambiguous because subsection (A)'s "attorney" is "facially irreconcilable" with the section's first part since

> "[e]ither Congress inadvertently omitted the 'debtor's attorney' from the 'payees' list, on which the court of appeals relied, or it inadvertently retained the reference to the attorney in the latter, 'payees' list." Brief for Petitioner 17.

Similarly, with respect to the missing conjunction "or" he says,

> "[t]here is no apparent reason, other than a drafting error, that Congress would have rewritten the statute to produce a grammatically incorrect provision." *Ibid.*

This is the analysis followed by the Courts of Appeals that hold the statute is ambiguous. See *In re Top Grade Sausage, supra,* at 129 (noting in its search for ambiguity that "[p]rior to amendment, it was undisputed that the repetition of officers in § 330(a)(1)(A) was meant to parallel the officers

previously listed in §330(a)(1)"); see also *In re Century Cleaning Services*, 195 F. 3d, at 1057–1058 (engaging in same resort to previous enactment to inquire as to the current text's ambiguity). One determines ambiguity, under this contention, by relying on the grammatical soundness of the prior statute. That contention is wrong.

The starting point in discerning congressional intent is the existing statutory text, see *Hughes Aircraft Co.* v. *Jacobson*, 525 U. S. 432, 438 (1999), and not the predecessor statutes. It is well established that "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.*, 530 U. S. 1, 6 (2000) (internal quotation marks omitted) (quoting *United States* v. *Ron Pair Enterprises, Inc.*, 489 U. S. 235, 241 (1989), in turn quoting *Caminetti* v. *United States*, 242 U. S. 470, 485 (1917)). So we begin with the present statute.

## A

The statute is awkward, and even ungrammatical; but that does not make it ambiguous on the point at issue. In its first part, the statute authorizes an award of compensation to one of three types of persons: trustees, examiners, and §327 professional persons. A debtor's attorney not engaged as provided by §327 is simply not included within the class of persons eligible for compensation. In subsection (A) the statute further defines what type of compensation may be awarded: compensation that is reasonable; and for actual, necessary services; and rendered by four types of persons (the same three plus attorneys). Unless the applicant for compensation is in one of the named classes of persons in the first part, the kind of service rendered is irrelevant.

The missing conjunction "or" does not change our conclusion. The Government points to numerous federal statutes that inadvertently lack a conjunction. They are read, none-

theless, for their plain meaning. See Brief for Respondent 17, n. 4. Here, the missing conjunction neither alters the text's substance nor obscures its meaning. This is not a case where a "not" is missing or where an "or" inadvertently substitutes for an "and." The sentence may be awkward; yet it is straightforward.

Subsection (A)'s nonparalleled fourth category of persons who can render compensable services does not cloud the statute's meaning. Petitioner reasons that since the section is a single sentence, and since it appears to strive for parallelism between those authorized to receive fees and those whose services are compensable, there is an ambiguity as to what "attorney" in § 330(a)(1)(A) refers to in § 330(a)(1). He also points to neighboring § 331, which provides for both debtors' attorneys and § 327 professional persons to receive interim compensation after an order for relief is entered but before an application for § 330 fees is filed. He argues that since § 331 contemplates debtors' attorneys' receiving interim compensation there is reason to conclude that "attorney" in § 330(a)(1)(A) refers to debtors' attorneys in § 330(a)(1), though they go unmentioned in that clause.

Subsection (A)'s "attorney," however, can be read in a straightforward fashion to refer to those attorneys whose fees are authorized by § 330(a)(1): attorneys qualified as § 327 professional persons, that is, in a Chapter 7 context, those employed by the trustee and approved by the court. See § 327(a) (appointed trustee may "employ one or more attorneys . . . to represent or assist the trustee in carrying out the trustee's duties under this title); § 327(e) (appointed trustee may "employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, . . ."). Likewise, § 331's reference to interim compensation for debtors' attorneys most straightforwardly refers to debtors' attorneys authorized under § 327.

It must be acknowledged that, under our reading of the text, the word "attorney" in subsection (A) may well be surplusage. Subsection (A)'s reference to § 327 professional persons undoubtedly includes attorneys, as much as does § 330(a)(1)'s reference to professional persons. That is not controlling, however. Surplusage does not always produce ambiguity and our preference for avoiding surplusage constructions is not absolute. See *Chickasaw Nation* v. *United States*, 534 U. S. 84, 94 (2001) (the preference "is sometimes offset by the canon that permits a court to reject words 'as surplusage' if 'inadvertently inserted or if repugnant to the rest of the statute'"). Where there are two ways to read the text—either attorney is surplusage, in which case the text is plain; or attorney is nonsurplusage (*i. e.*, it refers to an ambiguous component in § 330(a)(1)), in which case the text is ambiguous—applying the rule against surplusage is, absent other indications, inappropriate. We should prefer the plain meaning since that approach respects the words of Congress. In this manner we avoid the pitfalls that plague too quick a turn to the more controversial realm of legislative history.

### B

The plain meaning that § 330(a)(1) sets forth does not lead to absurd results requiring us to treat the text as if it were ambiguous. See *supra*, at 534 (citing *Hartford Underwriters*). Petitioner disagrees and argues that our interpretation will "entail an inexplicable, wholesale departure from . . . the guiding principle of the 'prompt and effectual administration' of federal bankruptcy law." Brief for Petitioner 30. He says that our reading "attribute[s] to Congress an illogical, penny-wise and pound-foolish determination to eliminate entirely—as a purportedly asset-preserving measure—compensation that is essential to debtors' receipt of legal services." *Id.*, at 35.

These arguments overstate the effect of § 330(a)(1). Under the text's instruction compensation remains available to

debtors' attorneys through various permitted means. First, while § 330(a)(1) requires proper authorization for payment to attorneys from estate funds in Chapter 7 filings, it does not extend throughout all bankruptcy law. Compensation for debtors' attorneys in Chapter 12 and 13 bankruptcies, for example, is not much disturbed by § 330 as a whole. See, *e. g.*, 11 U. S. C. § 330(a)(4)(B) ("In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney").

Compensation for debtors' attorneys working on Chapter 7 bankruptcies, moreover, is not altogether prohibited. Sections 327 and 330, taken together, allow Chapter 7 trustees to engage attorneys, including debtors' counsel, and allow courts to award them fees. See §§ 327(a) and (e). Section 327's limitation on debtors' incurring debts for professional services without the Chapter 7 trustee's approval is not absurd. In the context of a Chapter 7 liquidation it advances the trustee's responsibility for preserving the estate.

If we add to all this the apparent sound functioning of the bankruptcy system under the plain meaning approach, petitioner's arguments become unconvincing. Seeming order has attended the rule's application for five years in the Fifth Circuit and for four years in the Eleventh Circuit. See *In re American Steel Product, Inc.*, 197 F. 3d 1354 (CA11 1999); *In re Pro-Snax Distributors, Inc.*, 157 F. 3d 414 (CA5 1998). It appears to be routine for debtors to pay reasonable fees for legal services before filing for bankruptcy to ensure compliance with statutory requirements. See generally Collier Compensation, Employment and Appointment of Trustees and Professionals in Bankruptcy Cases ¶ 3.02[1], p. 3–2 (2002) ("In the majority of cases, the debtor's counsel will accept an individual or a joint consumer chapter 7 case only after being paid a retainer that covers the 'standard fee' and the cost of filing the petition"). So our interpretation accords with common practice. Section 330(a)(1) does not

prevent a debtor from engaging counsel before a Chapter 7 conversion and paying reasonable compensation in advance to ensure that the filing is in order. Indeed, the Code anticipates these arrangements. See, *e. g.*, § 329 (debtors' attorneys must disclose fees they receive from a debtor in the year prior to its bankruptcy filing and courts may order excessive payments returned to the estate).

## C

Petitioner's argument stumbles on still harder ground in the face of another canon of interpretation. His interpretation of the Act—reading the word "attorney" in § 330(a) (1)(A) to refer to "debtors' attorneys" in § 330(a)(1)—would have us read an absent word into the statute. That is, his argument would result "not [in] a construction of [the] statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope." *Iselin* v. *United States*, 270 U. S. 245, 251 (1926). With a plain, nonabsurd meaning in view, we need not proceed in this way. "There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted." *Mobil Oil Corp.* v. *Higginbotham*, 436 U. S. 618, 625 (1978).

Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding. It results from "deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill." *United States* v. *Locke*, 471 U. S. 84, 95 (1985) (citing *Richards* v. *United States*, 369 U. S. 1, 9 (1962)).

Adhering to conventional doctrines of statutory interpretation, we hold that § 330(a)(1) does not authorize compensation awards to debtors' attorneys from estate funds, unless they are employed as authorized by § 327. If the attorney is to be paid from estate funds under § 330(a)(1) in a Chapter

7 case, he must be employed by the trustee and approved by the court.

III

Though we find it unnecessary to rely on the legislative history behind the 1994 enactment of § 330(a)(1), we find it instructive that the history creates more confusion than clarity about the congressional intent. History and policy considerations lend support both to petitioner's interpretation and to the holding we reach based on the plain language of the statute.

Petitioner, for instance, cites evidence supporting the conclusion that a scrivener's error obscures what was Congress' real intent. For over 100 years debtors' attorneys have been considered by Congress and the courts to be an integral part of the bankruptcy process. See Bankruptcy Act of 1898, ch. 541, §§ 59(d) and 64(b), 30 Stat. 561, 563. See also *In re Kross*, 96 F. 816 (SDNY 1899). It is fair to doubt that Congress would so rework their longstanding role without announcing the change in the congressional record. Cf. *Cohen* v. *de la Cruz*, 523 U. S. 213, 221 (1998) ("We . . . will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure" (internal quotation marks and citation omitted)).

The legislative processes behind the change also lend some support to petitioner's claim. In 1994 the original proposed draft of new § 330(a)(1) featured two changes: stylistic changes throughout the section and the addition of a new provision giving the Government a right to object to fee applications. See S. 540, 103d Cong., 1st Sess. (1993), reprinted in S. Rep. No. 103–168 (1993). The right to object provision was added at § 330(a)(1)'s end. Thus it came immediately after the critical text "or to the debtor's attorney," which the draft edited to read "or the debtors *[sic]* attorney." *Ibid.* Before voting the Act into law, however, Congress amended the proposed draft. See 140 Cong. Rec. 8383

(1994) (setting out amendment 1645 to S. 540). Amendment 1645 made only two changes to § 330(a)(1): It deleted the Government's right to object provision and the critical words ("or the debtors [sic] attorney"). The rest of the original proposed draft remained intact. Legislative history explains the first deletion, for the provision was installed elsewhere, as new § 330(a)(2). Nothing, however, explains the second. That the Government's right to object was deleted and reinstated (i. e., reorganized), while the words at issue, which had preceded the moved provision, were deleted with no notation in the legislative history suggests the scrivener just reached too far in his deletion. These factors combined to convince a leading treatise on bankruptcy law, Collier, that the deletion was a scrivener's error and ought not have any effect. See 3 Collier on Bankruptcy ¶ 330.LH[5], at 330–75 to 330–76.

There are other aspects of the legislative record, however, that undermine this interpretation. These considerations suggest Congress may have intended the change the scrivener worked. For example, amendment 1645 was part of a reform Act designed to curtail abuses in fee awards, according to statements by the amendment's sponsor. See 140 Cong. Rec., at 28753 (statement of Sen. Metzenbaum). These abuses were not ghosts seen only by Congress. Some bankruptcy courts had reached the same conclusion. See, e. g., In re NRG Resources, Inc., 64 B. R. 643 (Bkrtcy. Ct. WD La. 1986). The deletion at issue furthered this reform by ensuring that Chapter 7 debtors' attorneys would receive no estate compensation absent the trustee's authorization of their work. This objective is not inconsistent with the interest of involving debtors' attorneys in bankruptcy proceedings. As noted, the Act still allows debtors' attorneys to be compensated in different ways. See supra, at 536–539.

Amendment 1645, viewed in its entirety, gives further reason to think Congress may have intended the change. The amendment added a new section that authorizes fee awards

to debtors' attorneys in Chapter 12 and 13 bankruptcies. 140 Cong. Rec., at 8383 (setting out new 11 U. S. C. § 330(a)(4)(B)). Since the amendment's deletion of "or the debtors *[sic]* attorney" from the original proposed draft affected Chapter 12 and 13 debtors' attorneys as much as Chapter 7 debtors' attorneys, § 330(a)(4)(B) shows a special intent to authorize the formers' fee awards in the face of the new, broad exclusion.

If Congress' action does not prove the point, the House of Representatives' inaction may. The House passed the Act after having the deletion, as well as its impact, called to its attention. See Bankruptcy Reform: Hearing before the Subcommittee on Economic and Commercial Law of the House Committee on the Judiciary, 103d Cong., 2d Sess., 551 (1994). The National Association of Consumer Bankruptcy Attorneys (NACBA), which represents those lawyers most likely to be affected by § 330(a)(1)'s change, declined to object to the deletion. *Ibid.* (noting the deletion but stating that the NACBA did "not oppose" amendment 1645's passage). This alert, followed by the Legislature's nonresponse, should support a presumption of legislative awareness and intention. The Act may now contain surplusage, along with grammatical error; but that may have been the result of trying to make the substantive change with the fewest possible textual alterations or of an error by the scrivener in carrying out the change.

These competing interpretations of the legislative history make it difficult to say with assurance whether petitioner or the Government lays better historical claim to the congressional intent. The alert to the change in policy was given, to be sure, before the House passed the final version, but that particular circumstance cannot bear too much weight. The alert was not the subject of testimony from any witness at the congressional hearing. It consisted of but two sentences contained within 472 pages of written statements delivered to the legislative subcommittee for its August 17,

1994, hearing day. Those 472 pages were added to 236 pages of prepared statements and testimony transcribed from the day's testifying witnesses. Within the NACBA's filing, the two relevant sentences appear on the 18th page of the 27-page report. Nothing in the legislative history confirms that this particular point bore on the congressional deliberations or was given specific consideration.

These uncertainties illustrate the difficulty of relying on legislative history here and the advantage of our determination to rest our holding on the statutory text.

* * *

If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent. "It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result." *United States v. Granderson*, 511 U. S. 39, 68 (1994) (concurring opinion). This allows both of our branches to adhere to our respected, and respective, constitutional roles. In the meantime, we must determine intent from the statute before us. The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

JUSTICE STEVENS, concurring in the judgment, joined by JUSTICE SOUTER and JUSTICE BREYER, concurring.

As the majority recognizes, *ante*, at 539–540, a leading bankruptcy law treatise concluded that the 1994 amendments to §330(a)(1) contained an unintended error. 3 Collier on Bankruptcy ¶ 330.LH[5], pp. 330–75 to 330–76 (rev. 15th ed. 2003). Whenever there is such a plausible basis for believing that a significant change in statutory law resulted from a scrivener's error, I believe we have a duty to examine leg-

islative history.[1]  In this case, that history reveals that the National Association of Consumer Bankruptcy Attorneys (NACBA) not only called the assumed drafting error to Congress' attention in a timely fashion, but also deemed the error unworthy of objection.[2]  This evidence convinces me that the Court's reading of the text, which surely is more natural than petitioner's, is correct.  I therefore concur in the judgment.

---

[1] As Chief Justice Marshall stated, "Where the mind labours to discover the design of the legislature, it seizes every thing from which aid can be derived . . . ." *United States* v. *Fisher*, 2 Cranch 358, 386 (1805).

[2] *See ante*, at 541.  *Specifically, three months after the Senate passed* the relevant amendment, the NACBA submitted written comments to the House Subcommittee on Economic and Commercial Law, which was considering the change.  Those comments first noted that the amended version of § 330(a)(1) "appears to have some minor drafting errors,. including the apparently inadvertent removal of debtors' attorneys from the list of professionals whose compensation awards are covered."  Bankruptcy Reform: Hearing before the Subcommittee on Economic and Commercial Law of the House Committee on the Judiciary, 103d Cong., 2d Sess., 551 (1994).  With no proviso that these alleged errors be corrected, the NACBA then expressly did "*not* oppose" passage of the amendment. *Ibid.* (emphasis added).