In re ENTERPRISE ACQUISITION PARTNERS, INC., Debtor.

Miller Avenue Professional and Promotional Services, Inc., Appellant,

v.

Lois I. Brady, Chapter 7 Trustee, Appellee.

BAP No. NC–04–1023–PMAS. Bankruptcy No. 02–42192. Adversary No. 03–04078.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 17, 2004.

Filed Dec. 28, 2004.

628

Wayne A. Silver, Sunnyvale, CA, for Miller Professional and Promotional Services, Inc.

Mariam S. Marshall, Marshall & Ramos, LLP, Oakland, CA, for Lois I. Brady.

Before: PERRIS, MARLAR and SMITH, Bankruptcy Judges.

## OPINION

PERRIS, Bankruptcy Judge.

This is an appeal of a judgment avoiding as preferential the transfer of a security interest in debtor Enterprise Acquisition Partners, Inc.'s (debtor) property. Under bankruptcy law, the reach-back period for avoiding transfers of the debtor's property differs depending on whether or not the transferee is an insider. *See* 11 U.S.C. § 547(b).[1] Bankruptcy law recognizes two types of insiders: those specifically identified in § 101(31), commonly referred to as "per se" insiders, and those not so identified but who have a sufficiently close relationship with the debtor to be insiders, commonly referred to as "non-statutory" insiders. The issue in this appeal involves construction of the list of per se insiders identified in § 101(31). The question is whether the bankruptcy court correctly determined that defendant Miller Avenue Professional and Promotional Services, Inc. (MAPPS) was a per se insider of debtor, because MAPPS was wholly owned by an insider of debtor. We conclude that the bankruptcy court erred, and therefore REVERSE.

## FACTS

In July 2002, debtor executed a note payable to MAPPS for $125,000, secured by debtor's accounts receivable. Shortly after debtor failed to repay the loan on its due date in December 2002, MAPPS recorded a UCC–1, thereby perfecting its security interest. Debtor filed its chapter 7 petition 92 days after the UCC–1 was recorded.

MAPPS is a corporation that is wholly owned by Patricia Mapps, who is MAPPS's president, sole director, and sole employee. At the time MAPPS made the loan to debtor and recorded the UCC–1, Ms. Mapps was married to Patrick Salmon. At all pertinent times, Mr. Salmon was a 10 percent shareholder and an officer and director of debtor.

Debtor's bankruptcy trustee brought this action to avoid as a preferential transfer the perfection of the security interest that resulted from the recording of the UCC–1. *See* § 547(b). Because the UCC–1 was recorded more than 90 days but less than a year before bankruptcy, it is avoidable as a preferential transfer only if MAPPS was an insider of debtor. § 547(b)(4)(B).

Shortly before trial, the trustee sought a determination, based on stipulated facts, that MAPPS was an insider as a matter of law. In response, MAPPS filed what it called a cross-motion for summary judgment, seeking a determination that it was not a statutory insider as a matter of law.

At the beginning of trial, all issues regarding the preference had been resolved except the question of insider status. The court gave a tentative ruling that, as a matter of law, MAPPS was a per se insider. However, because an entity can be an insider even if it does not meet the statutory definition, depending on the facts, the

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

court allowed two days of testimony with regard to whether MAPPS qualified as a "non-statutory" insider.

At the close of trial, the court reiterated the ruling that it had made at the outset of the trial, that MAPPS was a per se insider as a matter of law. The court then considered whether MAPPS also qualified as a non-statutory insider, based on the facts established at trial, and concluded that it did not. The court said:

> Therefore, the outcome of the case really depends on whether I am correct in concluding that an individual who would qualify as a *per se* insider within the definition of Section 101 may not insulate a transaction from avoidance during the non-insider preference period by running the transaction through her professional corporation.
>
> I rule in favor of the plaintiff in this case. However, if the issue is appealed, if the case is appealed, and reversed on the appellate court's conclusion that MAPPS, Inc. is not a *per se* insider, it need not be remanded because I would find judgment for the defendant. So it's a pure legal issue, as I see it.

Transcript of December 17, 2003 trial at 62:8–19.

The court entered judgment for plaintiff, and MAPPS appealed.

## ISSUE

Whether the bankruptcy court erred in ruling that MAPPS was a per se insider.

## STANDARD OF REVIEW

■■■ Ordinarily, "determination of insider status is a question of fact." *In re Friedman,* 126 B.R. 63, 67 (9th Cir. BAP 1991). In this case, however, the court held that MAPPS was an insider as a matter of law, based on undisputed facts. This determination is more akin to a summary judgment ruling, which is reviewed *de novo*. Because the court's ruling is a pure question of law, we review *de novo*. *See In re Schuman,* 81 B.R. 583, 586 n. 1 (9th Cir. BAP 1987) (where the underlying facts are undisputed, and the question is whether those facts meet a statutory standard, "it would be more accurate to consider the insider determination as a mixed question of law and fact.").

■■■ The issue with regard to the bankruptcy court's conclusion that MAPPS was the alter ego of Ms. Mapps is whether the court applied the correct legal standard. That is also a question of law that we review de novo. *See In re Birrane,* 287 B.R. 490, 494 (9th Cir. BAP 2002) (whether court properly applied legal standard is question of law).[2]

## DISCUSSION

A trustee can avoid a transfer of an interest in a debtor's property if the transfer meets certain requirements, including that the transfer occurred within the requisite pre-bankruptcy period. § 547(b).[3] Because the transfer at issue in this case,

---

**2.** The trustee argues that the alter ego determination is a question of fact, reviewed for clear error. MAPPS does not challenge the court's factual findings; it challenges the legal conclusion that it is the alter ego of Ms. Mapps.

**3.** Subsection 547(b) provides, as relevant:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
> . . . .
> (4) made—
> (A) on or within 90 days before the date of the filing of the petition; or
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider[.]

the filing of the UCC–1 to perfect MAPPS's security interest in debtor's property, occurred more than 90 days but less than one year before bankruptcy, it is avoidable under § 547 only if MAPPS was an insider. § 547(b)(4)(B).

The Bankruptcy Code lists entities that are considered "insiders" when the debtor is a corporation:

"insider" includes—

. . . .

(B) if the debtor is a corporation—

  (i) director of the debtor;

  (ii) officer of the debtor;

  (iii) person in control of the debtor;

  (iv) partnership in which the debtor is a general partner;

  (v) general partner of the debtor; or

  (vi) relative of a general partner, director, officer, or person in control of the debtor[.[4]]

§ 101(31). The definition is not limiting: "[t]he use of the word 'includes' is indicative of Congress' intent not to limit the classification of insiders to the statutory definition." *In re Friedman,* 126 B.R. 63, 69–70 (9th Cir. BAP 1991).

There are two distinct types of insiders,

those entities specifically mentioned in the statute ("relative," "partnership," "general partner," and "corporation"), i.e. per se insiders, or those not listed in the statutory definition, but who have a ". . . sufficiently close relationship with the debtor that . . . conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." *Wilson v. Huffman,* 712 F.2d [206,] 210 [ (5th Cir.1983) ].

*In re Anderson,* 165 B.R. 482, 485 (Bankr. D.Or.1994).

While the respective insider definitions do not attempt or purport to be all inclusive, it may be fairly said that each definition is based on either one of two relational classifications. First, the Code assigns insider status to entities or relatives of the debtor, or of persons in control of a related entity, whose affinity or consanguinity gives rise to a conclusive presumption that the individual or entity commands preferential treatment by the debtor. Second, insider status may be based on a professional or business relationship with the debtor, in addition to the Code's *per se* classifications, where such relationship compels the conclusion that the individual or entity has a relationship with the debtor, close enough to gain an advantage attributable simply to affinity rather than to the course of business dealings between the parties.

*Friedman,* 126 B.R. at 69 (footnote omitted).

"When the transferee is a per se insider, the court does not need to examine the actual nature of the relationship." *Anderson,* 165 B.R. at 485. The per se insider is considered to be close enough to the debtor to demand preferential treatment as a matter of law, regardless of whether the insider has any actual control over the actions of the debtor. This appeal involves only the construction of the per se insider provisions.

1. *Per se insider—statutory construction*

In this case, the bankruptcy court held that, as a matter of law, MAPPS was a per se insider of debtor. Its reasoning was that (1) Mr. Salmon was an officer and

---

4. " '[R]elative' means individual related by affinity or consanguinity within the third degree as determined by the common law, or individual in a step or adoptive relationship within such third degree[.]" § 101(45).

director of debtor, and so was an insider of debtor pursuant to § 101(31)(B)(i) and (ii) (officers and directors of corporate debtors are insiders); (2) Ms. Mapps was married to Mr. Salmon, and so was also an insider of debtor pursuant to § 101(31)(B)(vi) (relatives of directors or officers of corporate debtor are insiders); and (3) MAPPS and Ms. Mapps were one and the same, so MAPPS was also an insider of debtor.

There is no dispute, and the court recognized that, if the loan had been made to debtor by Ms. Mapps as an individual and not by her professional corporation, the transaction would have been subject to avoidance as an insider preference, because Ms. Mapps the individual was a per se insider as defined by § 101(31). Because, in the court's view, there was no difference between Ms. Mapps and her professional corporation, MAPPS itself was also considered to be an insider of debtor.

■ The court's expansion of the list of per se insiders in § 101(31) to include an insider's solely owned corporation cannot be justified by the language of the statute. The court's task is to determine congressional intent; "[t]he starting point ... is the existing statutory text[.]" *Lamie v. United States Trustee*, 540 U.S. 526, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004). Where the statutory language is clear, the court must apply it by its terms, unless to do so would lead to absurd results. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). There is no way reasonably to read the term "relative of a general partner, director, [or] officer" as also including corporations that are wholly owned by a relative of a general partner, director, or officer.

Had Congress wanted to extend per se insider status to insiders of insiders, it knew how to do it. Section 101(31)(E)

provides that an "affiliate" of a debtor is an insider, as is an "insider of an affiliate as if such affiliate were the debtor[.]" Thus, the statute specifically includes insiders of insiders, when that is the intent of Congress. That Congress did not include such language in § 101(31)(B) shows its intent not to expand per se insiders to include insiders of relatives of insiders. *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (presumed that Congress acted intentionally when it included particular language in one part of a statute but omitted it from another).

Particularly in light of the conclusive presumption of preferential treatment that arises from a determination that an entity is a per se insider, there is no justification for expanding the definition of per se insider beyond what is plainly contained in the statute. To do so would result in adding language to the statute that is not there, which it is not within the province of the court to do. *See Lamie*, 540 U.S. at 537, 124 S.Ct. at 1032.

■ The case law recognizes that per se insider status should not be expanded to include those who are not listed in the statute. For example, in *Anderson*, 165 B.R. at 486, the bankruptcy court noted that the defendant probate estate of an insider (the mother of the individual debtor) was not listed in the definition of insider in § 101(31). Under the plain meaning of the definitional statute, the probate estate did not qualify as a per se insider under the Bankruptcy Code. Similarly, a former spouse was held not to be a per se insider of the debtor, even though a spouse is an insider by definition, *Schuman*, 81 B.R. at 585, and a fiance was held not to meet the definition of a per se insider. *In re Hollar*, 100 B.R. 892 (Bankr.N.D.Ohio 1989).

The bankruptcy court in this case may have been persuaded by the case relied on by the trustee, *In re Tyee Timbers, Inc.*, 139 B.R. 520 (Bankr.D.Or.1992). *Tyee Timbers* is distinguishable from this case, because in *Tyee Timbers*, the individual who had insider connections with both the debtor and the defendant was an "affiliate" of the debtor. As we noted above, an affiliate is specifically listed in § 101(31) as an insider. "Affiliate" is defined to include an entity that owns 20 percent or more of the debtor's voting stock. § 101(2)(A). Section 101(31)(E) provides that, not only are affiliates of the debtor insiders, so are "insider[s] of an affiliate as if such affiliate were the debtor[.]" § 101(31)(E).

In *Tyee Timbers*, Jerome Burley was president of the corporate defendant, but also owned 20 percent or more of the voting stock of the debtor. Burley was an affiliate of the debtor, because he owned more than 20 percent of the voting stock. Burley was an officer of the defendant corporation, and so the defendant corporation would have been an insider of Burley if Burley had been the debtor. § 101(31)(A)(iv). Therefore, the defendant corporation qualified as a per se insider of debtor under the express terms of the statute.

In this case, Ms. Mapps does not qualify as an affiliate. Therefore § 101(31)(E) does not apply to bring MAPPS into the purview of per se insider.

We conclude that the bankruptcy court erred in expanding the statutory list of per se insiders of a corporate debtor to include corporations that are solely owned by persons who qualify as per se insiders. Although the statutory definition is not limiting, those who do not qualify as per se insiders because they are not within the categories specifically listed in the definitional statute can qualify as insiders only if they meet the test for non-statutory insiders, which requires some showing of control of the debtor. *See Schuman*, 81 B.R. at 586.[5] The bankruptcy court specifically found that MAPPS did not meet that test.[6]

### 2. Per se insider—alter ego

The only way for MAPPS to qualify as a per se insider is for the corporate form to be disregarded and for MAPPS to be treated as one and the same as Ms. Mapps. That appears to have been the bankruptcy court's reasoning; the court said that MAPPS was "indistinguishable" from Ms. Mapps. Transcript of December 17, 2003 trial at 58:2–17. Therefore, in the court's view, a loan from MAPPS was actually a loan from Ms. Mapps the individual.[7]

---

**5.** In determining who qualifies as a non-statutory insider, the courts "focus on the closeness of the parties and the degree to which the transferee is able to exert control or influence over the debtor.... [A] transferee 'is an insider if, as a matter of fact, he exercises such control or influence over the debtor as to render their transaction not arms-length.'" *In re Schuman*, 81 B.R. 583, 586 (9th Cir. BAP 1987) (quoting *In re Lemanski*, 56 B.R. 981, 983 (Bankr.W.D.Wis.1986)).

**6.** Because the bankruptcy court found that MAPPS did not qualify as a non-statutory insider, and the trustee does not challenge that finding, we need not consider the argu-

ments raised by MAPPS about the proper standard for determining whether a creditor is a non-statutory insider. The issue in this case is limited to whether MAPPS was a per se insider.

**7.** We express no opinion about this unique use of the alter ego theory. Ordinarily, the corporate veil is pierced so that the shareholder can be held liable for the obligations of the corporation. In this case, the alter ego theory is being used in an attempt to hold the corporation liable because of its relationship to the shareholder.

MAPPS was a California corporation. "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003). This distinction exists even though all of the corporation's stock is owned by a single individual, or is a professional service corporation. 18 Am.Jur.2d "Corporations" § 51 (2004). The corporate form can be disregarded, piercing the veil that separates corporations and their shareholders, only under rare circumstances, "in the case of fraud or certain other exceptional circumstances." *Dole Food*, 538 U.S. at 475, 123 S.Ct. 1655.

State law controls whether it is appropriate for the bankruptcy court to pierce the corporate veil. *In re Pajaro Dunes Rental Agency, Inc.*, 174 B.R. 557, 582 (Bankr.N.D.Cal.1994). Under California law, the corporate form can be disregarded and the shareholder held liable for the corporation's actions when the corporation is merely the "alter ego" of a controlling shareholder. *Sonora Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523, 99 Cal.Rptr.2d 824, 836 (2000). There are two general requirements for application of this doctrine:

> "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow."

*Mesler v. Bragg Mgmt. Co.*, 39 Cal.3d 290, 216 Cal.Rptr. 443, 702 P.2d 601, 606 (1985) (quoting *Automotriz etc. de Cal. v. Resnick*, 47 Cal.2d 792, 306 P.2d 1, 3 (1957)).

In order to pierce the corporate veil, the court must apply the correct legal standard. That requires considering both the unity of interest between the shareholder and the corporation and whether an inequitable result will follow from recognizing the corporate form. Although the bankruptcy court considered the unity of interest prong and found that it was met, it failed to consider what inequity would follow if the corporate form were recognized.

In its final ruling, the court said:

> On the issue of whether MAPPS, Inc. was an insider when the UCC–1 was recorded, the court has already ruled as a matter of summary judgment that MAPPS, Inc. was a statutory insider, one of those—or a *per se* insider, one of those parties identified in 11 U.S.C. Section 101 as a *per se* insider.

> Pat Mapps is clearly an insider. Section 101 defines as a *per se* insider the relative of an officer or director. Pat Mapps was the wife of Pat Salmon, a shareholder, director and officer of the debtor. If the loan had been made by Pat Mapps, there would be no issue to discuss as to whether the loan was made by an insider. MAPPS, Inc. was Mapps'—Pat Mapps' professional corporation. In the court's view, MAPPS, Inc. is Pat Mapps. It has no employees and presumably exists only to limit Pat Mapps' liability. Mapps even testified that she zeroes out the corporation each year so she's not required to pay double taxes on corporate income.

> In addition, the evidence was that she considered making the loan personally rather than through her professional corporation, and that her professional corporation was not in the business and not interested in getting in the business of making loans to other companies.

> Under these circumstances, I do not see a distinction between a loan made by Pat Mapps and one made by MAPPS, Inc. for preference purposes. All that is

just to reiterate my ruling at the summary judgment stage, that I believe that MAPPS, Inc., under these circumstances, is indistinguishable from Pat Mapps.

I'm not ruling in any other context of the—her. She's not being determined to be the alter-ego of MAPPS, Inc. for tax purposes or anything like that.

. . . .

Therefore, the outcome of the case really depends on whether I am correct in concluding that an individual who would qualify as a *per se* insider within the definition of Section 101 may not insulate a transaction from avoidance during the non-insider preference period by running the transaction through her professional corporation.

Transcript of December 17, 2003 trial at 57:17–58:20; 62:8–13.

The court's determination that MAPPS was one and the same as Ms. Mapps appears to be based on the facts that MAPPS was a professional corporation, it had no employees, it existed only to limit Ms. Mapps's liability, Ms. Mapps distributed all income of the corporation each year so she would not have to pay double taxes, Ms. Mapps considered making the loan personally rather than through her professional corporation, and MAPPS was not in the business of making loans to other companies. Those facts could support a finding that MAPPS met the first part of the alter ego test: that there was such a unity of interest and ownership of the corporation and the shareholder that the separate personalities of the corporation and individual shareholder no longer existed. *See Mesler,* 216 Cal.Rptr. 443, 702 P.2d at 606.

In order to pierce the corporate veil, however, the court must also find that, "if the acts are treated as those of the corporation alone, an inequitable result will follow." *Id.* The bankruptcy court did not

make any such finding. The court said that Ms. Mapps should not be able to do indirectly through her corporation what she could not do directly. However, that is not a finding of inequity or unfairness.

The trustee argues that the court found that Ms. Mapps used her corporation "to shield herself from preference liability." Appellee's Brief at 28. She also argues that there would be harm to other creditors of the bankruptcy estate resulting from observing the distinction between the corporation and its shareholder, because failure to set aside the perfection of the security interest would result in fewer assets to be distributed to other creditors.

The bankruptcy court did not find that Ms. Mapps formed the corporation to avoid preference liability or that she used the corporation to make the loan in order to avoid preference liability. Nor did the court find that it would be inequitable to other creditors to observe the corporate form in this case. Although the trustee argues that allowing one creditor to retain a preference is inequitable, because it results in a smaller distribution to other creditors, there is nothing inherently inequitable about receiving a preferential transfer. Further, we are not willing to say that it is inequitable as a matter of law for a corporation wholly owned by an insider to receive and retain what would be a preferential transfer within one year before bankruptcy. There must be some facts showing that, in the particular case, recognizing the corporate form would result in inequity. No such facts exist in this case.

■ The court seemed particularly concerned that the corporation exists primarily to limit Ms. Mapps's liability. However, "[t]he organization of a corporation for the avowed purpose of avoiding personal responsibility ... is a legitimate purpose for incorporating and does not in itself constitute fraud justifying the disre-

gard of the corporate entity." 18 Am. Jur.2d "Corporations" § 58 (2004) (footnotes omitted). *See also Shafford v. Otto Sales Co.*, 119 Cal.App.2d 849, 260 P.2d 269, 277 (1953) ("formation of even a one-man corporation to obtain limited liability is a proper objective unless used for improper purposes").

> In any event,
>
> [t]he alter ego doctrine does not guard every unsatisfied creditor of a corporation but instead affords protection where *some conduct amounting to bad faith* makes it inequitable for the corporate owner to hide behind the corporate form. Difficulty in enforcing a judgment or collecting a debt does not satisfy this standard.

*Sonora Diamond Corp.*, 99 Cal.Rptr.2d at 837 (emphasis supplied). There was no evidence in this case that would have supported a finding of conduct amounting to bad faith.

█ Piercing the corporate veil requires more than a unity of interests; it also requires some inequity arising out of the use of the corporate form. The court did not make any finding that there was any such inequity in this case, nor does the trustee point to any evidence that would support such a finding. Therefore, the court erred.

The court made it clear that, if it were reversed on the per se insider determination, there is no need to remand, because the court also found that MAPPS does not qualify as a non-statutory insider. Therefore, the judgment must be reversed.

### CONCLUSION

The bankruptcy court erred in determining that MAPPS was a per se insider as a matter of law. Therefore, we REVERSE.